UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

HELENA AZEVEDO DAVID         :
                            :
            v.              :       C.A. No. 10-314M
                            :
MICHAEL J. ASTRUE,          :
Commissioner of the Social Security  :
Administration              :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

      This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on July 28, 2010 seeking to reverse the decision of the Commissioner.  On April 18, 2011, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (Document No. 10).  On May 16, 2011, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 11).

      This matter has been referred to me for preliminary review, findings and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions and independent legal research, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 10) be DENIED.

# I.     PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on February 29, 2008 (Tr. 92-102) alleging disability as of January 17, 2008.  Plaintiff's date last insured for DIB is December 31, 2012.  (Tr. 120).  Plaintiff's applications were denied initially on June 25, 2008 (Tr. 43-46) and on reconsideration on October 23, 2008.  (Tr. 53-55).  On November 13, 2008, Plaintiff requested an administrative hearing.  (Tr. 56).  On February 1, 2010, a hearing was held before Administrative Law Judge Martha Bower (the "ALJ") at which time Plaintiff, represented by counsel and assisted by an interpreter, and a vocational expert ("VE") appeared and testified.  (Tr. 18-38).  The ALJ issued a decision adverse to Plaintiff on February 17, 2010.  (Tr. 4-17).  Plaintiff's claim was selected for review by the Decision Review Board.  On May 27, 2010, the Decision Review Board notified Plaintiff that it had not completed its review of the ALJ's decision within the time allowed and that the ALJ's decision had thus become final.  (Tr. 1-3).  A timely appeal was then filed in this Court.

# II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in her evaluation of Plaintiff's fibromyalgia which undermined the evidentiary basis for her later RFC finding and Step 4 and 5 conclusions.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's RFC finding and non-disability determination are supported by the record and thus entitled to deference.

# III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final

judgment until after the completion of remand proceedings.  Id.

## IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the

claimant unable to do her previous work, or any other substantial gainful activity which exists in the

national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a

treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp.

2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the

nature and severity of a claimant's impairments is well-supported by medically acceptable clinical

and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in

the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human

Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them

such weight as is supported by clinical or laboratory findings and other consistent evidence of a

claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.      Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. <u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. <u>Seavey</u>, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. <u>Deblois v. Sec'y of Health and Human Servs.</u>, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. <u>Id.</u>

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. <u>Seavey</u>, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). <u>Seavey</u>, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. <u>Id.</u>; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. <u>Nguyen</u>, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. <u>Heggarty</u>, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. <u>See</u> <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." <u>Nguyen</u>, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.  Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was fifty-two years old at the time of the ALJ's decision.  (Tr. 99).  Plaintiff completed high school and worked in the past as a cashier, machine operator and jewelry packer. (Tr. 17, 33, 133).  Plaintiff has not worked since January 17, 2008, her alleged disability onset date. (Tr. 9).  Plaintiff claims disability due to depression, asthma, high cholesterol, sleep problems and fibromyalgia.  (Tr. 125, 159).

In January 2008, Plaintiff met with Dr. Emma Simmons at Family Care Center to follow-up on a recent asthma exacerbation.  (Tr. 272-275).  It was noted that Plaintiff was under stress, not sleeping well, overeating and depressed.  (Tr. 272, 274).  On January 21, 2008, Plaintiff reported that she felt tired and was unhappy about her weight, but her asthma and sleep had improved.  (Tr. 267-269).  On January 23, 2008, Plaintiff again stated that her asthma was improving, and, although she felt tired, she "was able to do things."  (Tr. 264-266).  At the time, it was also noted that Plaintiff's depression was improving.  (Tr. 257, 264).  During a meeting with Dr. Simmons on January 30, 2008, Plaintiff complained of pain in her back and hand.  (Tr. 257).

On January 31, 2008, Plaintiff began treatment for her depression at Gateway Healthcare. (Tr. 221-228, 235-241). During her initial evaluation, Plaintiff indicated that, although she suffered from pain, her pain was properly controlled with medication and did not affect her ability to engage in activities. (Tr. 223). Plaintiff also indicated that the only impairments which interfered with her ability to work were asthma and depression. (Tr. 241). Throughout the month of February, Plaintiff met with a Gateway counselor on different occasions and mostly reported problems with her boyfriend. (Tr. 230-233). The record does not contain any additional treatment notes indicating that Plaintiff pursued any further treatment at Gateway after February 29, 2008.

On February 9, 2008, Plaintiff again met with Dr. Simmons and complained of low back pain and indicated that she was having problems with her boyfriend and felt depressed. (Tr. 250). It was noted that Plaintiff's breathing problems had improved with medication, and she was encouraged to exercise and eat healthier. (Tr. 251). Later that month, Plaintiff complained of hand pain. (Tr. 242). In April 2008, Plaintiff reported back pain but indicated that her depression and asthma were better. (Tr. 490-491).

On June 9, 2008, Plaintiff met with Dr. Seok Suh Lee for a consultative medical examination and complained of asthma, high cholesterol and pain in her arms, legs, feet and hands. (Tr. 298-300). Dr. Lee diagnosed Plaintiff with fibromyalgia, asthma and morbid obesity. (Tr. 299-300).

On June 20, 2008, Plaintiff met with Dr. Simmons and only complained of pain in her back which appeared to have progressively worsened since she stopped working due to inactivity. (Tr. 500). Plaintiff's depression was noted to be better, and her asthma was described as "stable." (Tr. 500-501). In July 2008, however, Plaintiff complained of generalized pain and indicated that she could no longer perform activities such as cooking or adequate personal hygiene due to pain. (Tr.

502). Plaintiff also asked Dr. Simmons to review documents related to her application for disability. Id. Later in July 2008, Plaintiff complained of localized back pain and fatigue. (Tr. 511). She was also concerned that her providers may think that she was malingering as all her tests revealed normal results. Id.

In September 2008, Plaintiff again met with Dr. Simmons and complained of generalized pain, but she indicated that she was able to cook for her boyfriend and keep the house "neat." (Tr. 513-515). Her asthma was noted to be stable. (Tr. 513). In October 2008, Plaintiff's asthma was again described as stable, and she continued to complain of generalized pain. (Tr. 517). During subsequent appointments with Dr. Simmons, Plaintiff complained of back pain (Tr. 518-538) and, in some instances, no pain at all. (Tr. 539, 546, 549, 552). Also, in December 2008, Plaintiff reported that she had shoveled snow. (Tr. 521). An x-ray of Plaintiff's lumbar spine in February 2009 showed mild degenerative disc disease, but was otherwise normal. (Tr. 524).

In September 2009, following several appointments during which she indicated that she did not have any pain, Plaintiff again complained of generalized pain. (Tr. 556). Her asthma was noted to be stable, and she also indicated that she felt better regarding her obesity after meeting with other people who had similar problems and concerns. (Tr. 556-557). Later, in September 2009, Plaintiff complained of back pain. (Tr. 564). In November 2009 and January 2010, Plaintiff also met with Dr. Simmons and continued to complain of pain, but her depression and asthma were noted to be stable. (Tr. 567-574).

On January 26, 2010, Dr. Simmons completed several assessments of Plaintiff's functional capacity. (Tr. 575-584). Regarding Plaintiff's depression, Dr. Simmons indicated that Plaintiff was moderately affected by such impairment, but concluded that she could not sustain full-time

employment. (Tr. 575-576). Dr. Simmons then described the symptoms resulting from Plaintiff's obesity, asthma and back pain as severe and also concluded that she could not sustain full-time employment based on these impairments. (Tr. 577-578).

In a pain questionnaire, Dr. Simmons indicated that the level of Plaintiff's back pain was moderate, her pain would interfere with her ability to maintain the attention and productivity needed to work full-time on an ongoing basis, and she would be absent from work more than four days per month due to her pain. (Tr. 579). It was also noted that, due to her back pain, Plaintiff could only sit for two hours and stand/walk for one hour in an eight-hour workday, sit, stand or walk for one hour before she needed to lie down, could not lift more than five pounds occasionally and had several postural and environmental limitations. (Tr. 580). Lastly, regarding Plaintiff's asthma, Dr. Simmons stated that Plaintiff had three to four asthma attacks per year, each of which would incapacitate her for a period between one and two weeks, her asthma would occasionally interfere with her attention and concentration, and she could only sit, stand and walk for less than two hours in an eight-hour workday, could rarely lift less than ten pounds and had several postural and environmental limitations, including the need to avoid exposure to all fumes, odors and gases and concentrated exposure to dust, on account of her asthma. (Tr. 581-584).

On April 17, 2008, Dr. Russell Phillips, a state agency psychologist, reviewed Plaintiff's records and determined that she was able to understand and remember simple information, could maintain attention, concentration and pace for two hours at a time over simple tasks, could tolerate the social demands of simple-task settings, but not sustained contact with the general public, and was able to tolerate simple routine changes. (Tr. 296). Dr. Joseph Litchman, another state agency psychologist, subsequently agreed with this assessment. (Tr. 309).

In June 2008, Dr. Thomas Bennett, a state agency physician, reviewed Plaintiff's records and found that she was affected by asthma, obesity and fibromyalgia. (Tr. 301). Nonetheless, Dr. Bennett concluded that she retained the ability to perform the requirements of light work with certain additional postural and environmental limitations, including an opinion that Plaintiff should avoid even moderate exposure to dusts, fumes, odors, gases and poor ventilation. (Tr. 302-308). Dr. Edward Hanna, another state agency physician, subsequently agreed with this assessment. (Tr. 310).

A.      **The ALJ's Decision**

At Step 2, the ALJ concluded that Plaintiff's depression, morbid obesity, asthma and fibromyalgia are "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 10). However, at Step 3, the ALJ did not find that these impairments, either singly or in combination, met or medically equaled any Listings. Id. As to RFC, the ALJ found that Plaintiff was capable of performing light work with certain postural and environmental limitations. (Tr. 11). She also found moderate limitations in concentration, persistence and pace, and in social interactions. Id. Based on this RFC and testimony from the VE, the ALJ concluded at Step 4 that Plaintiff was not disabled because she was capable of performing her past work as a machine operator and jewelry packer. (Tr. 17). The ALJ also made an alternative Step 5 finding that Plaintiff was able to perform other light, unskilled jobs present in the region. (Tr. 17, n.8).

B.      **The ALJ Properly Evaluated Plaintiff's Fibromyalgia in the Context of the Entirety of this Record**

Plaintiff's primary argument is that the ALJ failed to consider the "subjective nature of fibromyalgia" and erroneously focused on the lack of objective evidence in assessing the treating physician opinions and her own credibility. Plaintiff relies upon Johnson v. Astrue, 597 F.3d 409 (1st Cir. 2009) (per curiam), a case involving fibromyalgia. In Johnson, the First Circuit found an

ALJ's evaluation of a claimant's fibromyalgia to be "significantly flawed," in part, because the ALJ improperly considered the lack of objective findings substantiating the claimant's condition. Id. at 412. The First Circuit based its conclusion on the fact that fibromyalgia is defined as a condition involving bilateral pain, multiple tender points, normal musculoskeletal and neurological examinations and no laboratory abnormalities. Id. at 410. In other words, fibromyalgia is primarily a subjective diagnosis, and the absence of objective symptoms does not, by itself, preclude such a diagnosis. Id. at 411-414; see also Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994) (noting that C.F.S. is also diagnosed based largely on a patient's subjective complaints).

Although Plaintiff accurately summarizes the holding in Johnson, this case is distinguishable. Here, the ALJ's RFC assessment is properly supported by and consistent with the expert medical opinions of Dr. Phillips and Dr. Litchman, state agency psychologists, and Dr. Bennett and Dr. Hanna, state agency physicians. The ALJ thoroughly considered these opinions in her decision and explained her reasons for affording them "substantial evidentiary weight." (Tr. 15-16). In particular, although Dr. Bennett recognized the existence of symptoms (generalized aches and pains with multiple tender points) consistent with a diagnosis of fibromyalgia, he concluded, based on his review of the medical records, that Plaintiff remained capable of work at light exertional levels with certain postural and environmental limitations consistent with the ALJ's RFC findings. (Tr. 11, 302-303, 305). Thus, even if the ALJ made any mistake in her evaluation of Plaintiff's fibromyalgia, Dr. Bennett and Dr. Hanna properly evaluated the condition and thus the ALJ's reliance on their expert opinions is reasonable and would render any error on the ALJ's part to be harmless. See Berrios Lopez v. Sec'y of HHS, 951 F.2d 427, 431-432 (1st Cir. 1991) (concluding substantial evidence supported ALJ's RFC evaluation based on reports of non-examining physicians). Further, this case

is plainly distinguishable from <u>Johnson</u> because the ALJ in <u>Johnson</u> relied primarily upon "flawed" physician RFC assessments – one which did not even mention fibromyalgia as a diagnosis and one which "misunderstood the nature of this condition" and focused on the absence of objective findings. Neither flaw is present in this case. Thus, unlike <u>Johnson</u>, the ALJ had substantial medical evidence supporting her conclusion.

Plaintiff also challenges the ALJ's finding that her statements as to the intensity, persistence and limiting effects of her pain was not entirely credible. (Tr. 14). Plaintiff contends that the ALJ erred because "[i]t is apparent that the ALJ's primary focus in assessing [her] credibility [was] the lack of objective evidence." (Document No. 10 at p. 11). Plaintiff's argument is unsupported. While the ALJ did note the lack of "clinical signs and objective findings" supporting the severe limitations alleged by Plaintiff, it was not her primary focus. The ALJ also accurately pointed out that Plaintiff's reported activity level was inconsistent with the severe limitations alleged. (Tr. 14). For instance, on September 25, 2008, Plaintiff complained that her boyfriend was not appreciative of "the work and time she puts in to make the house neat and have dinner ready when he comes home." (Tr. 514). Yet, at an appointment with Dr. Simmons on July 16, 2008 (the day before she hired an attorney to pursue her disability appeal) (Tr. 47-49), she reported that she could not cook or wipe and had a friend do her shopping, cooking and cleaning. (Tr. 502). She also asked Dr. Simmons at that appointment "to go over [the] note from the disability agency that is denying her application." <u>Id.</u> The ALJ also accurately considered that Plaintiff reported to Dr. Simmons on December 24, 2008 that she had shoveled snow a couple of days earlier. (Tr. 521).

Furthermore, the ALJ properly exercised her discretion in noting that Plaintiff's reported pain symptoms dramatically increased after her initial disability claim was denied and she hired an

attorney to pursue an appeal. (Tr. 12, n.1). On June 18, 2008, Plaintiff reported only back pain to Dr. Simmons with an intensity of 5 out of 10. (Tr. 500). On June 25, 2008, Plaintiff's initial disability claim was denied, in part, because her discomfort did not prevent her from moving about and using her arms, hands and legs in a satisfactory manner. (Tr. 43). On July 16, 2008, Plaintiff reported pain "all over" to Dr. Simmons with increased intensity of 7 out of 10 and indicated that the pain required her to crawl up the stairs and prevented her from performing personal hygiene, cooking, shopping and cleaning. (Tr. 502). The ALJ indicated that, although the "questionable timing of these events is certainly not dispositive on the issue of disability," "it does not bode well for [Plaintiff's] overall credibility especially considering that less than one month later she reported cooking dinner every night for her boyfriend and keeping the house neat." (Tr. 12, n.1). The Court agrees that the sudden increase in symptoms is suspicious, and the ALJ cannot be faulted for considering these circumstances in assessing Plaintiff's credibility.

Finally, Plaintiff has shown no reversible error in the ALJ's treatment of Dr. Simmons' opinions that Plaintiff was totally disabled. The ALJ determined that Dr. Simmons' opinions were entitled to little evidentiary weight because they were inconsistent with the record as a whole and not supported by her treatment notes. (Tr. 16; 20 C.F.R. §§ 404.1527 and 416.927). Dr. Simmons completed several questionnaires at the request of Plaintiff's counsel on January 26, 2010 (several days prior to the ALJ hearing) which generally conclude that Plaintiff is unable to work due to her depression, obesity, asthma and back pain.[1] (Tr. 575-578). However, under 20 C.F.R. § 404.1527(e), the ultimate issue of disability, i.e., inability to work, is one reserved to the Commissioner, and no special significance is given to the source of an opinion on such issues. 20

_____

[1] Dr. Simmons makes no mention of Plaintiff's fibromyalgia in these questionnaires.

C.F.R. § 404.1527(e)(3). These are simply "not medical opinions." 20 C.F.R. § 404.1527(e). Thus, the ultimate opinion of Dr. Simmons that Plaintiff is unable to work is not a medical opinion covered by the scope of 20 C.F.R. § 404.1527(d)(2)'s "good reasons" requirement. See Gadoury v. Astrue, C.A. No. 08-140S, 2009 WL 2762504 at *2 (D.R.I. Aug. 27, 2009).

As to Dr. Simmons' general opinions as to Plaintiff's symptoms and functional capacity, these opinions are subject to the treating physician rule. Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship, the frequency of the examinations, consistency with the record and record support. 20 C.F.R. § 404.1527(d)(2)-(3). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ determined that Dr. Simmons' opinions were entitled to "little evidentiary weight" because they are inconsistent with the record as a whole and not supported by the treatment notes. (Tr. 16). For instance, the ALJ accurately points out that Dr. Simmons' treatment records do not reflect the significant degree of impairment reflected in the questionnaires and are inconsistent with other evidence regarding Plaintiff's level of activity. Id. The ALJ also accurately

points out the lack of any substantiation for Dr. Simmons' conclusory opinion that Plaintiff's pain would cause her to miss at least four workdays per month. (Tr. 16, 579). Finally, the ALJ accurately notes that there is no medical evidence in the record to support Dr. Simmons' report of three to four asthma attacks per year which each result in a one- to two-week period of incapacitation. (Tr. 16, 581-582). In fact, in the same questionnaire, Dr. Simmons described the severity of the attacks as "wheezy, SOB [shortness of breath], [and] cough" and described Plaintiff's prognosis as "good." (Tr. 581-582). The ALJ identified her reasons for discounting the weight given to Dr. Simmons' opinions and, since they are supported by the record, her conclusion is entitled to deference. See Soto-Cedeño v. Astrue, 380 Fed. Appx. 1, 2010 WL 2573086 at **2-3 (1st Cir. 2010) (per curiam) (finding that the ALJ must give "supportable reasons" for rejecting a treating physician opinion).

In sum, the ALJ did not err by favoring the opinions of Dr. Phillips, Dr. Litchman, Dr. Bennett and Dr. Hanna over the opinions of Dr. Simmons. "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)). In other words, the issue presented is not whether this Court would have found Plaintiff's impairments to be disabling but whether the record contains sufficient support for the ALJ's non-disability finding. Plaintiff has shown no error in the ALJ's evaluation of the medical evidence. The ALJ's decision reflects that she appropriately weighed the entirety of the evidence and had a sufficient basis in the record for her conclusions. Although Plaintiff disagrees with the ALJ's ultimate conclusions, she has not shown any error in the ALJ's evaluation of the record. See Rivera-Torres v. Sec'y of Health

and Human Servs., 837 F.2d 4, 5 (1ˢᵗ Cir. 1988) (the resolution of evidentiary conflicts is within the province of the ALJ).  Accordingly, her decision must be affirmed.

## IV.   CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be GRANTED and Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 10) be DENIED.  I further recommend that final judgment enter in favor of Defendant affirming the Commissioner's decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1ˢᵗ Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1ˢᵗ Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 17, 2011